UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANNY RAY SCARBOROUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:05-1051 |
| ) | Judge Trauger/Knowles |
| U. S. MARINE CORPS, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

REPORT AND RECOMMENDATION

For the reasons stated below, the undersigned RECOMMENDS that this action be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. The undersigned further RECOMMENDS that any appeal NOT be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

I. INTRODUCTION

The plaintiff, proceeding *pro se* and *in forma pauperis*, is a resident of Tennessee Ridge, Tennessee. (Docket Entry No. 1, ¶ 2, p. 1) The plaintiff seeks to have his bad conduct discharge (BCD) reviewed, to be reinstated in rank and given credit for time in grade to the present date as an "officer," to have his BCD changed to a discharge under honorable conditions for medical reasons, to be retired with a pension, and to be awarded five million dollars ($5,000,000.00) for fraud and breach of contract. (Docket Entry No. 1, ¶ 5, p. 3)

This action was referred to the undersigned on December 15, 2005 to conduct a "frivolity review under 28 U.S.C. § 1915(e)(2)(B) and for case management, decision on all pretrial, non-dispositive motions and report and recommendations on all dispositive motions under 28 U.S.C. § 636(b)(1)(A) and (B) and to conduct any necessary proceedings under Rule 72(b), Fed. R. Civ. P."

(Docket Entry No. 3)

## II. BACKGROUND

The plaintiff asserts that he entered active duty in the U. S. Marine Corps ("the Marine Corps") on October 5, 1978. (Docket Entry No. 1, ¶ 4, p. 2) The following year, on October 23, 1979 a Special Court Martial (SPCM) was convened and the plaintiff, a Private First Class at the time, was found guilty of violations under Articles 121 (Larceny and wrongful appropriation), 130 (Housebreaking), and 134 (the "General article") of the Uniform Code of Military Justice (UCMJ). (Docket Entry No. 1, ¶ 4, p. 2; Attach. Record of Trial, dtd. Oct. 23, 1979) As a result of his subsequent conviction, the plaintiff asserts that he was reduced in rank and required to serve twenty-four days in the brig. (Docket Entry No. 1, ¶ 4, p. 2) According to the plaintiff, the charges were to have been "remitted" after six months.[1] (Docket Entry No. 1, ¶ 4, p. 2)

On September 22, 1981, the plaintiff received a second SPCM in which he claims to have been accused of violating Articles 80, 123, and 131 of the UCMJ.[2] (Docket Entry No. 1, ¶ 4, p. 2 (cont.)) Although the plaintiff does not say what the disposition was of his case, the record shows that he was found guilty on all three charges and sentenced:

> [t]o be discharged from the service with a bad conduct discharge, to be confined at hard labor for five months, to forfeit $350.00 pay per month for five months, and to be reduced to private, pay grade E-1.

(Docket Entry No. 1, Attach. SPCM Order No. 8-82, dtd. Apr. 23, 1982, p. 3) Although the plaintiff

---

[1] According to the attached Record of Trial, the plaintiff was sentenced "[t]o be confined at hard labor for a period of 90 days, to forfeit $200.00 pay per month for three months, to be reduced to pay grade E-1 [Private], and to be discharged . . . with a bad conduct discharge." (Docket Entry No. 1, Attach. Record of Trial dtd. Oct. 23, 1979, p. 3) On review, the convening authority approved the sentence but suspended the "confinement at hard labor in excess of 30 days and [the] bad conduct discharge . . . for a period of six months, at which time, unless the suspension [wa]s sooner vacated, the suspended portions of the sentence w[ould] be remitted without further action." (Docket Entry No. 1, Attach. Action of Convening Authority, dtd. Nov. 26, 1979)

[2] The attached copy of the charges shows that the plaintiff actually was charged with violating Articles 80 (Attempts), 121, and 123 (Forgery) of the UCMJ. (Docket Entry No. 1, Attach. SPCM Order No. 8-82, dtd. Apr. 23, 1982, pp. 1-2)

2

alleges that he asked to appeal "but was refused," the record shows that the action was forwarded to the Commanding General, First Marine Brigade for review on January 7, 1982. (Docket Entry No. 1, ¶ 4, p. 2 (cont.); Attach. SPCM Order No. 8-82, dtd. Jan. 7, 1982, p. 4) The sentence was affirmed on August 9, 1982. (Docket Entry No. 1, Attach. Service Record Book (SRB) Excerpts, Supplementary Record of Conviction by Court-Martial)

Thereafter, the plaintiff claims that he reported for duty with the Criminal Investigative Division (CID) for "undercover work" where he served as the company executive officer (XO) – the position of second in command in the Marine Corps – after which he was permitted to take leave pending appeal of his SPCM. (Docket Entry No. 1, ¶ 5, p. 2 (cont.)) The plaintiff asserts that the October 23, 1979 SPCM, *i.e.*, his first court-martial, was approved and he was discharged on December 23, 1982 with a BCD. (Docket Entry No. 1, ¶ 5, p. 2 (cont.))

### III. ANALYSIS

Although *pro se* complaints are to be construed liberally by the courts, *see Boag v. McDougall*, 454 U.S. 364, 365 (1982), under 28 U.S.C. § 1915(e)(2), courts are required to dismiss a complaint brought by a plaintiff proceeding *in forma pauperis* "at any time the court determines" that the complaint is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) and (B)(ii).

The district court has jurisdiction in this action under 28 U.S.C. § 1331, *see e.g., Chandler v. United States Air Force*, 272 F.3d 527, 529 (8th Cir. 2001) and the Administrative Procedure Act, 5 U.S.C. § 704, *et seq.*, *see e.g., Piersall v. Winter*, 435 F.3d 391, 320 (D.C. Cir. 2006).[3]

Two administrative courses of action were available to the plaintiff at the time he was discharged. First, under 10 U.S.C. § 1552, the plaintiff could have sought to "correct an error or

---

[3] There are very few Sixth Circuit opinions that address the type of claims presently before the Court. Therefore, this analysis relies extensively on authority from other jurisdictions.

remove an injustice" from his record if he filed a request for review within "three years after he discover[ed] the error or injustice." *Id*. at (a)(1) and (b). Second, the plaintiff could have sought, within fifteen years of his discharge, to have his discharge reviewed under 10 U.S.C. § 1553. *Id*. at (a).

Before claims such as those raised by the plaintiff in this action may be brought in district court, the plaintiff must first exhaust one of the administrative remedies described above. *See Lanthorn v. Commandant of the United States Marine Corps*, 1999 WestLaw 96751 (6th Cir. (Ohio)); *Long v. Secretary of the Army*, 1994 WestLaw 545431 (6th Cir. (Ky.)); *Barnes v. United States Army, Board of Corrections*, 1988 WestLaw 123498 (6th Cir. (Ohio)); *Long v. Healey, et al.*, 1986 WestLaw 16211 (6th Cir. (Ky.)); *see also Seepe v. Department of the Navy*, 518 F.2d 760 (6th Cir. 1975).

The plaintiff has provided a copy of a document dated September 25, 1986 from the Naval Discharge Review Board (NDRB)[4] advising him that its "final decision [wa]s that [his] discharge [wa]s proper as issued and that no change [wa]s warranted." (Docket Entry No. 1, Attach. doc. dtd. Sep. 25, 1986) Several conclusions can be drawn from the Notice of Decision. First, the fact that the NDRB mailed the Notice of Decision to the plaintiff shows that the plaintiff was aware of his right to have his BCD reviewed and that he sought such a review.[5] Second, the plaintiff filed his

---

[4] Discharges by the Department of the Navy, including the Marine Corps, may be reviewed by the NDRB and/or the Board for Correction of Naval Records (BCNR). The NDRB consists of five Navy officers empowered to review and change a discharge "to reflect its findings." 10 U.S.C. § 1553(b). Any veteran seeking NDRB review is entitled to a hearing under § 1553(c) but must request a review within fifteen years of discharge. The BCNR, on the other hand, is staffed by civilians with the mandate to correct any Navy record when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The BCNR's scope of review is broader than the NDRB's. The statute of limitations for BCNR action is three years. 10 U.S.C. § 1552(b). The BCNR generally does not review a case unless the NDRB already has reviewed it and denied full relief. Review by both boards is not required for exhaustion purposes. *See e.g., Vietnam Veterans of America v. Secretary of the Navy*, 843 F.2d 528, 531 (D.C. Cir. 1988).

[5] The fact that the Notice of Decision was issued by the NDRB establishes that the plaintiff sought review of his BCD under § 1553.

4

request for review prior to September 25, 1986. Third, the plaintiff exhausted his administrative remedies for purposes of bringing a civil action in federal court.

Having established that the plaintiff exhausted his administrative remedies, the next question is whether his complaint in this action is timely. The statute of limitations for claims raised pursuant to proceedings under §§ 1552 or 1553 is set forth in 28 U.S.C. § 2401. *See e.g., Blassingame v. Secretary of Navy*, 811 F.2d 65, 72 (2nd Cir. 1987); *Walters v. Secretary of Defense*, 725 F.2d 107, 110 (D.C. Cir. 1983). Under § 2401, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *Id.* at (a). A plaintiff's right under § 2401 "'first accrues' when the plaintiff knows or has reason to know of the injury complained of." *Stupak-Thrall v. Glickman*, 343 F.3Fd 579, 584 (6th Cir. 2003)(citing *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir.1991)).

Assuming that the plaintiff received the Notice of Decision within a reasonable time after it was dated, the right of action would have accrued to the plaintiff in late September or early-to-mid October of 1986. The six-year statute of limitations under § 2401 would, therefore, have run six years later, *i.e.*, in late September or early-to-mid October 1992. Given that the plaintiff filed his complaint on December 15, 2005, he brought this action more than thirteen years after the statute of limitations under § 2401 had run based on the date on the Notice of Decision. The critical inquiry is, however, when the plaintiff actually knew of the Notice of Decision, or through the exercise of due diligence, ought to have known of it.

The record shows that the NDRB mailed the Notice of Decision to the plaintiff at 903 Fairwin Avenue, Apt. B, Nashville, TN 37216. (Docket Entry No. 1, Attach. corres. dtd. Sep. 25, 1986) However, penned beneath the address is the statement, "Never resided at above address." Assuming that the plaintiff wrote this statement, the penned statement does not say that he did not

5

receive the Notice of Decision within a reasonable time after it was dated – only that he never resided at the address to which the Notice of Decision was mailed. The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)(citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)). In other words, the penned statement does not establish that the plaintiff did not receive notice of the NDRB's decision in sufficient time for him to file a civil action in district court within the six-year statute of limitations under § 2401 based on the date on the Notice of Decision.

Although the plaintiff makes no mention of it in the statement of the claim, the record shows that he was provided with a copy of the Notice of Decision in an October 11, 2005 letter from Headquarters Marine Corps (HQMC).[6] However, nowhere does the plaintiff assert that this was the first time that he knew of the Notice of Decision, nor, apart from attaching a copy of the letter to the complaint, does he mention it in the statement of the claim. As explained above, will the Court will not read such unpled facts into the complaint. Here too, there is nothing in the fact that the plaintiff received a copy of the Notice of Decision from HQMC in 2005 that supports the inference that he was not on notice of the NDRB's decision in time to file within the six-year statute of limitations under § 2401 based on the date on the Notice of Decision.

Of course, neither of the points discussed above establishes definitively when the plaintiff was on notice of the NDRB's decision for purposes of the statute of limitations under § 2401. Therefore, the Court addresses the question of "notice" in the context of when, through the exercise

---

[6] On November 1, 2005, nearly nineteen years after he received notice from the NDRB, the plaintiff wrote a letter to the Secretary of the Navy challenging the validity of his discharge. (Docket Entry No. 1, Attach. ltr. dtd. Sep. 1, 2005) On October 11, 2005, G. Michalick of the Personnel Management Support Branch at HQMC wrote to the plaintiff in response to his letter to the Secretary of the Navy. Michalick provided the plaintiff with copies of his SRB, explained the circumstances under which he was discharged, reminded the plaintiff of the NDRB's decision that his discharge "was proper as issued and that no change was warranted," and provided him with a copy of the Notice of Decision. (Docket Entry # 1, Attach. HQMC ltr. dtd. October 11, 2005)

6

of due diligence, the plaintiff ought to have learned of the NDRB's decision.

In his September 1, 2005 letter to the Secretary of the Navy, the plaintiff wrote that he had been "trying for over 18 years to get someone to" to look at his records. (Docket Entry No. 1, Attach. ltr. dtd. Sep. 1, 2005) Taking the plaintiff's statements to the Secretary of the Navy as true, to have pursued this matter for that length of time means that the plaintiff began his efforts within a year – not more than two – after the NDRB issued its Notice of Decision. In that same letter, the plaintiff wrote that the records of his case are "over 15 years old." (Docket Entry No. 1, Attach. ltr. dtd. Sep. 1, 2005) Because the plaintiff's court-martial related records would have been more than twenty-two years old when he wrote to the Secretary of the Navy, the Court concludes that the fifteen-year old records to which the plaintiff refers are records that he obtained at the beginning of his eighteen-year effort. From this, the Court further concludes that, had the plaintiff exercised due diligence with respect to the claim that he filed with the NDRB, one of those fifteen-year old records would have been a copy of the NDRB's Notice of Decision.

Using the fifteen-year mark as the basis for when the plaintiff was on notice of the NDRB's decision or, through the exercise of due diligence, ought to have been aware of it, the six-year statute of limitations under § 2401 would have begun to run not later than the last day of December in 1990, *i.e.*, fifteen years prior to when the plaintiff wrote to the Secretary of the Navy. Using the last day of December 1990 as the baseline, the six-year statute of limitations would have run not later than the last day of December 1996. Based on these best-case time frames, the plaintiff brought the instant action nearly nine years after statute of limitations under § 2401 had run.

The next question is whether the statute of limitations should be equitably tolled.

The United States Supreme Court has held that the doctrine of equitable tolling applies to claims against departments of the United States government. *Irwin v. Veterans Affairs, et al.*, 498

7

U.S. 89, 96 (1990). Equitable tolling also has been held to apply to claims raised pursuant to actions arising out of §§ 1552 and 1553. *Anderson v. United States*, 46 Fed.Cl 725, 727 (2000)(citing *Irwin*, 498 U.S. at 89).

The Sixth Circuit has held that equitable tolling is appropriate only after the district court has considered and balanced the factors set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). The factors to be considered under *Andrews* are: 1) lack of actual notice of filing requirement; 2) lack of constructive knowledge of filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the respondent; and 5) a petitioner's reasonableness in remaining ignorant of the notice requirement. *Id.* at 151. The factors considered in deciding whether to equitably toll a limitations period are not comprehensive, nor is each relevant in all cases. *Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). As to the fourth factor, "[a]lthough absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified, it is not an independent basis for invoking the doctrine. . . ." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984).

The plaintiff does not argue that the statute of limitations should be equitably tolled. In fact, the plaintiff does not mention either the statute of limitations or equitable tolling. Moreover, given that the plaintiff ought to have known of the Notice of Decision not later than December 1996, given that he did not file the instant action until approximately nine years later, he cannot be viewed as having been diligent in pursuing his right to seek relief in federal court. For these reasons, the Court concludes that equitable tolling is not warranted in this case.

Based on the foregoing, the Court concludes that this action is barred by the six-year statute of limitations under 28 U.S.C. § 2401.

8

## IV. RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS that this action be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. The undersigned further RECOMMENDS that any appeal NOT be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation within which to file with the district court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have ten (10) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

It is so ORDERED.

E. Clifton Knowles
Magistrate Judge